Lucille Lalmant Deigendesch and Jean Lalmant Leighton *v.* County of Bucks, Board of Assessment of the County of Bucks et al. Bucks County Board of Assessment Appeals, Appellant.

In Re: Appeal of Feeneys Nursery, Inc. From the Order of Bucks County Board of Assessment Appeals etc. Bucks County Board of Assessment Appeals, Appellant.

Argued June 7, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Martin J. King,* Solicitor, for appellant.

*John Philip Diefenderfer,* with him *Robert F. Ruehl, Albert L. Blackman, Jr., Robert C. Steiger* and *Robert L. White,* for appellees, Lucille Lalmant Deigendesch and Jean Lalmant Leighton.

*William T. Renz, Power, Bowen & Valimont,* for appellee, Feeneys Nursery, Inc.

OPINION BY JUDGE WILLIAMS, JR., April 18, 1983:

These consolidated cases require that this Court examine an act[1] permitting counties to covenant with

_____

[1] Act of January 13, 1966, P.L. (1965) 1292, *as amended,* 16 P.S. §§11941-11947.

property owners for the preservation of unimproved land to obtain preferential tax assessment treatment (Act). Under the provisions of such a covenant, a land owner agrees, on behalf of "himself and his successors and assigns in right, title and interest"[2] to maintain the subject tract as farm, forest, water supply, or open space land, for a specified period of years. In turn, the county agrees to consider the restriction on the use of the land in assessing same. Should the property owner breach the covenant, he is required to pay the tax differential between the full assessed value and the compensatory assessed value from the effective date of the covenant.

Although the cases *sub judice* share an issue relating to whether the conveyance of a portion of covenanted land out of common ownership constitutes a breach of the Act, procedural and factual differences lead us to discuss the cases individually.

## 116 C.D. 1982

In 1972, the Claytons covenanted with Bucks County that they would maintain their 76-acre tract as farm land,[3] pursuant to the provisions of the Act and the Bucks County Declaration of General Conditions for Covenants. They subsequently sold the property to the appellee herein, Feeneys Nursery, Inc., subject to that covenant. Thereafter, on November 4, 1979, a real estate broker serving as selling agent for Feeneys notified the Bucks County Board of Assessment Appeals (Board) that Feeneys was selling 5.4 acres of the restricted tract, and requested that the property be con-

---

[2] 16 P.S. §11943.

[3] Farm land is defined in Section 1 of the Act, 16 P.S. §11941, as "[a]ny tract or tracts of land in common ownership of at least twenty acres in area, used for the raising of livestock or the growing of crops,"

sidered in breach of the Act.[4] The Board treated the sale as a breach, and computed the back taxes which would be due as a result thereof.[5] The money was escrowed at the November 16, 1979 settlement, and was ultimately paid.

Feeneys took a timely appeal of the determination of breach to the Board, which, after hearing, concluded that its original decision was correct; the sale of a portion of the tract constituted a breach of the covenant and the Act. On appeal, the common pleas court rejected that conclusion. It examined both the Act and the county Declaration of Conditions, and determined that neither enactment so limited the free exercise of the rights of ownership, as to forbid the property owner to either subdivide or sell the tract as a unit.

The Board appealed that decision to this Court, asking (1) whether the sale of 5.4 acres out of common ownership constitutes a breach of the Act, and (2) whether the notification to the Board of the impending sale by the real estate agent bound the landowner. Because we opine that the common pleas court properly interpreted the Act in asserting that the sale, without more, did not result in a breach of the Act and covenant, we need not address the second question raised.

Under Section 6 of the Act, 16 P.S. §11946, a breach occurs:

> If the land owner, his successors or assigns, while the covenant is in effect, alters the use of the land to any use other than that designated in the covenant. . . .

---

[4] The reason gven for this apparently civic-minded gesture was that the Board could then promptly make the necessary tax computations, which would then be available at settlement.

[5] The back taxes would be the difference between what was paid, and what would have been payable absent the covenant, plus interest. 16 P.S. §11946.

This section provides the only discussion of breach in the Act, and clearly limits that event to an alteration of use, even while contemplating the possibility that the *successors or assigns* of the land owner might effectuate that breach. As the common pleas court correctly stated:[6]

It is clear under the Act that a change in ownership of the entire tract, to heirs, assigns, successors, etc., will not breach the covenant. Further, all such new owners would be bound by the covenant and have all the rights, privileges, duties and liabilities of the original owner. We believe that a change of ownership by conveying a portion of a tract should follow the same reasoning. The new owners will have the same responsibilities and duties as the original owner, i.e., they must maintain the land in the use for which it was covenanted. Any change in use whether it be on half an acre or 20 acres would breach the covenant for the *entire* tract and cause the recomputation of taxes on the *entire* tract. Of course, the original owner who sells a portion of his covenanted land runs the risk that his purchaser may violate the Act 515 agreement and thus invoke the roll-back tax penalty on the original owner's entire retained land, even possibly long after the transfer.

This analysis, resulting in a determination that a change in ownership of all or part of the covenanted tract does not constitute a breach, is not inconsistent with our statement in *Appeal of Pfirrmann*, 63 Pa. Commonwealth Ct. 407, 410, 437 A.2d 1336, 1338 (1981), that

the statutory definitions of "farm land" and "open space land" were intended to describe

---

[6] 37 Bucks County Law Reporter 235, 240 (1981).

the kind of property which is *initially eligible* to
be placed in the program. (Emphasis added.)
The property in question was initially eligible to be
placed in the program because at that time it was in
common ownership. Absent a change of *use* from that
covenanted for, it remains eligible for the assessment
treatment permitted by the Act.

## 1136 C.D. 1981

In August, 1972, Eugene Lalmant covenanted with
Bucks County to maintain his 23.492-acre tract as farm
land. He died in 1975, and the property passed into
his wife's possession. When she, in turn, died in 1976,
she left a will devising the land to her two daughters.
In settlement of the estate, the sisters executed two
deeds, the first of which conveyed approximately 4½
acres and the farmhouse to one; the second conveyed
the remainder of the tract to both as tenants-in-
common. By letter of September 19, 1979, the Office
Supervisor for the Board notified the executrix that
the property transfer breached the covenant, and that
"[a]ny person aggrieved by this decision may appeal
to the Board within 30 days." No appeal was filed.
On April 25, 1980, the sisters filed a declaratory judg-
ment action in the common pleas court, seeking a dec-
laration that the roll-back of the taxes and concomitant
determination of breach were improper. The Board
filed preliminary objections asserting that jurisdiction
over the matter is vested solely in it, that this was a
collateral attack on a matter which should have been
appealed, and therefore declaratory judgment was an
inappropriate avenue of relief.

The common pleas court dismissed the objections,
reversed the Board on the merits in a Decree Nisi, and
subsequently entered that decision as a final order.
On appeal to this Court the Board raises the same
questions it presented in preliminary objections below,

as well as that, preserved below, of whether the conveyance of land out of common ownership breached the Act and the covenant. That issue was resolved, *supra,* and will not be further addressed.

We turn to the question of whether the common pleas court erred in determining that a declaratory judgment action is an available legal remedy under the circumstances. The Declaratory Judgments Act, 42 Pa. C. S. §§7531-7541, makes clear that such suits are "additional and cumulative to all other available remedies'"[7] except those enumerated in 42 Pa. C. S. §7541 (c), two of which are pertinent to this matter:

(2) Proceeding within the exclusive jurisdiction of a tribunal other than a court.

(3) Proceeding involving an appeal from an order of a tribunal.

Since our review of the law establishes that the Board is a tribunal,[8] *Cf. Iannarone v. Township of Springbrook,* 65 Pa. Commonwealth Ct. 42, 441 A.2d 810 (1982), and this Court has previously described the statutory remedy[9] available for assessment appeals[10] as "mandatory and exclusive," *Appeal of Ce-*

---

[7] 42 Pa. C. S. §7541(b).

[8] A tribunal is a

court, district justice or other judicial officer vested with the power to enter an order in a matter. The term includes a government unit, other than the General Assembly and its officers and agencies, when performing quasi-judicial functions.

42 Pa. C. S. §102.

[9] See the act regulating Assessments in Counties of the Second Class A and Third Class, Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §§5342-5350j.2.

[10] This Court is affronted by the total disregard of Bucks County of *Bensalem Township School District v. Bucks County Commissioners,* 8 Pa. Commonwealth Ct. 411, 303 A.2d 258 (1973) in which we termed correct the ruling of the Bucks County Court of Common Pleas that changes in assessments such as are the subject of this case may only occur "in the regular and due course of established

*darbrook Realty, Inc.,* 39 Pa. Commonwealth Ct. 150, 395 A.2d 613 (1978), we are constrained to hold that this declaratory judgment action is precluded by subsection (2) above-quoted. We therefore conclude that the common pleas court erred when it determined that it had jurisdiction to entertain such a suit.

ORDER IN 1136 C.D. 1981

AND Now, this 18th day of April, 1983, the order of the Court of Common Pleas of Bucks County dated April 30, 1981, docketed at No. 80-4587-12-1, is hereby reversed and vacated for lack of jurisdiction.

ORDER IN 116 C.D. 1982

AND Now, this 18th day of April, 1983, the order of the Court of Common Pleas of Bucks County dated December 23, 1981, docketed at No. 80-3473-09-6 is hereby affirmed.

annual assessment procedures." **22 Bucks County Law Reporter 293, 309 (1972).** That the parties apparently chose to waive the defect in modification of the assessment by failing to appeal same to the Board does not ameliorate the displeasure of this Court.