563 A.2d 981

REVENUE APPEALS BOARD, NORTHAMPTON COUNTY and County of Northampton, Appellants,

v.

Richard C. FUISZ, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 17, 1989.

Decided Sept. 7, 1989.

Edward L. Redding, Assistant County Solicitor, Bethlehem, for appellants.

Leonard M. Cohen, Hellertown, for appellee.

Before CRUMLISH, Jr., President Judge, COLINS, J., and NARICK, Senior Judge.

COLINS, Judge.

The Northampton County Revenue Appeals Board (Board) and the County of Northampton (County) (collectively referred to as appellants) appeal an order of the Court of Common Pleas of Northampton County, dated October 4, 1988, which granted the appeal of Richard C. Fuisz (appellee), reinstated a covenant entered into between appellee, his brother, Robert E. Fuisz (Robert) and the County, and struck the revised assessment and rollback taxes imposed.

On November 26, 1975, appellee and Robert covenanted with the County pursuant to the Act of January 13, 1966, P.L. (1965) 1292, *as amended*, 16 P.S. §§ 11941–11947 (commonly referred to as Act 515)[1] to preserve 57.37 acres of land they held as joint tenants as open space land in exchange for a real property tax assessment which would reflect the fair market value of the land as restricted by the covenant. On May 21, 1987, Robert conveyed to appellee his one-half interest in 3.75 acres of the covenanted land. The County notified the Fuiszes on June 15, 1987, that this conveyance constituted a breach of the covenant they had entered into in 1975 and that they would now be subject to a revised assessment and rollback taxes.[2] They were subsequently billed by the County Tax Claim Bureau for the additional taxes due in the amount of $6,757.67. Appellee petitioned for review of the revised assessment, which was

1. Act 515 is officially titled: "An Act enabling certain counties of the Commonwealth to covenant with land owners for preservation of land in farm, forest, water supply, or open space uses."

2. As set forth in Section 6 of Act 515, 16 P.S. § 11946, rollback taxes are the difference between the real property taxes actually paid and

denied by the Board. He then appealed to the trial court which found in his favor, reinstating the covenant, and ordering the revised assessment and rollback taxes stricken. Hence, the Board and County appeal to this Court.

The central issue presented for our review is whether the conveyance of a portion of Act 515 covenanted land from both joint owners to one owner individually, both parties to the covenant, constitutes a breach of the covenant.

Section 1(4) of Act 515, 16 P.S. § 11941(4), requires that land covenanted as open space land be (1) in common ownership, and (2) consist of at least 10 acres in area. The central issue focuses on the first of the two requirements; i.e., whether the conveyance by Robert to appellee effectively terminated the "common ownership," as required by Act 515.

Appellants focus on paragraph 5 of the covenant the Fuiszes executed on November 26, 1975 which states:

5. BREACH OF COVENANT BY LANDOWNER. Section 6 of Act 515, aforesaid, as now effective or as hereafter amended and effective, shall govern a breach of covenant by the Owner(s), their successors and assigns. It is understood and agreed particularly, without intending to limit the definition of a breach of covenant hereunder, that a conveyance of a portion of the parcel of land, which is the subject of covenant hereunder, shall, in itself, constitute a breach of covenant unless the successor entitled to the portion will enter upon a further covenant under Act 515 with the County on or before the anniversary date of the instant covenant, occurring next after the date of conveyance.

Appellants argue that the conveyance by Robert, of his undivided one-half interest in the 3.75 acre tract, to appellee did in and of itself, breach the covenant.

Appellants cite *Deigendesch v. County of Bucks,* 73 Pa.Commonwealth Ct. 488, 458 A.2d 657 (1983), *aff'd in*

the taxes which would have been payable in the absence of a covenant, plus compound interest at the rate of 5% per annum from the date of the covenant to the date of its breach or from a date five years prior to the date of breach whichever period is shorter.

*part and rev'd in part,* 505 Pa. 555, 482 A.2d 228 (1984), wherein the Pennsylvania Supreme Court held that the conveyance by a landowner of 5.4 acres of covenanted farm land constituted a breach of the covenant and thereby subjected the landowner to the penalties provided under 16 P.S. § 11946. Therein, an owner of land which was the subject of a covenant with Bucks County to maintain it as farm land in exchange for preferential tax assessment provided for by Act 515, subsequently conveyed a 5.4 acre parcel of the original 76.39 acre tract. The Bucks County Board of Assessment Appeals determined that the conveyance breached the Act 515 covenant and assessed rollback taxes. The landowner appealed and the trial court found in its favor based on a conclusion that a change in ownership as a result of a conveyance of a portion of the tract does not breach the covenant as long as the land is maintained in the physical use for which it was covenanted pursuant to 16 P.S. § 11946.[3] This Court agreed with the trial court and affirmed. The Pennsylvania Supreme Court reversed this Court on the basis that the conveyance destroyed the essential requirement that the tract must be in common ownership.

The facts in the instant matter are distinguishable from those in *Deigendesch.* Therein, when the landowner conveyed the 5.4 acre parcel, the purchaser of that parcel was not a party to the original covenant. In the instant matter, both Robert and appellee were parties to the original covenant and continued to remain parties thereto. Hence, we find that the conveyance from Robert to appellee of the 3.75 acre parcel did not destroy their common ownership of the covenanted land and that the necessary requirement of common ownership remains undisturbed.

Were we to accept the Board's argument, we would be required to presume that the legislature intended the defini-

---

**3.** Section 6 of Act 515, 16 P.S. § 11946, governing breach, provides: [i]f the landowner, his successors or assigns, while the covenant is in effect, alters the use of the land to any use other than that designated in the covenant, such alteration shall constitute a breach of the covenant. . . .

tion of the term "common ownership," as used in Act 515, as being restricted to either joint tenancy[4] or tenancy in common.[5] This, we conclude, would run counter to the intent of the legislature in enacting Act 515 to encourage the preservation of open land, farms, forests, and water supplies within the Commonwealth. If the ability of two or more individuals to covenant for preservation is restricted only to land held in joint tenancy or tenancy in common, this would prohibit individual owners of parcels of less than ten acres from pooling their parcels so as to obtain the benefit of Act 515, as is illustrated by the following example:

Party "A" owns 6.1 acres of land. Party "B" owns 3.7 acres of land. Party "C" owns 2.5 acres of land. All of the parties own the land as individuals, in fee. Obviously, none of the parties own the minimally required ten acres but, since the three parcels are contiguous, the individuals could pool the parcels and, thereby, meet the ten-acre minimum. Each of the parties would individually covenant with the Commonwealth and with each other that the land would be kept forever open pursuant to the tenets of Act 515. Therefore, the interest of the Commonwealth would be furthered in ensuring the preservation of open space within the Commonwealth for the advancement of aesthetic and environmental purposes.

However, if we were to require the three parties to each transfer their ownership to a tenancy in common, or a joint tenancy, it is unlikely that such an arrangement would occur, since the owner of the larger parcel (A) would be, in effect, giving away part of his land to the owners of the smaller parcels. The practical ramifications of this would certainly serve to inhibit the use of Act 515. Furthermore,

4. A joint tenancy is created by a single conveyance or devise of the same estate to two or more grantees other than husband and wife. Each joint tenant owns an undivided share of the entire estate. Ladner on Conveyancing in Pennsylvania § 1.06 (J. Makdisi ed. 1979).

5. A tenancy in common exists when each of two or more owners holds an undivided fractional interest in a parcel of real property. Each one owns the whole of his undivided interest and not an undivided part of the whole such as in the case of a joint tenancy. Ladner on Conveyancing in Pennsylvania § 1.07 (J. Makdisi ed. 1979).

Act 515 itself does not define "common ownership." Therefore, pursuant to the Statutory Construction Act of 1972,[6] we are required to give the words of the statute their plain meaning, rather than substituting a legalistic definition.

Prior to the conveyance, appellee and Robert owned the covenanted land as joint tenants. While the conveyance changed slightly the nature of the joint tenancy, the essential characteristic of common ownership was not disturbed. We do not find anything in Act 515, nor in the *Deigendesch* decision which would indicate that covenanted land must remain a joint tenancy in order to qualify for the preferential tax treatment. The land which was placed in covenant on November 25, 1985 by the Fuiszes continues to be owned by one or the other of the covenantors, both of whom are still bound by the covenant. Therefore, we find there was no breach of the original agreement.

Accordingly, we affirm the decision of the trial court.

## ORDER

AND NOW, this 7th day of September, 1989, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.