521 A.2d 105

Columbia Gas of Pennsylvania, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Pennsylvania Gas Association, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Equitable Gas Company, a division of Equitable Resources, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

The Peoples Natural Gas Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 8, 1986, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Jan P. Paden,* with him, *J. Bruce Walter* and *Frank A. Sinon, Rhoads & Sinon,* and *Wallace R. Barnes* and *Thomas E. Morgan,* for petitioner, Columbia Gas of Pennsylvania, Inc.

*Thomas J. Sniscak,* with him, *Joseph J. Malatesta, Jr.,* and *Kevin J. McKeon, Malatesta, Hawke, McKeon & Morris,* for petitioner, Pennsylvania Gas Association.

*Lawrence B. Nydes*, for petitioner, Equitable Gas Company.

*Dennis J. Lewis*, with him, *Victoria Lee*, *Alder, Cohen & Grigsby, P.C.*, and *William P. Boswell*, for petitioner, The Peoples Natural Gas Company.

*Daniel P. Delaney*, Deputy Chief Counsel, with him, *Charles D. Shields, Jr.*, Assistant Counsel, and *Charles F. Hoffman*, Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

*Barbara Stratton Kahoe*, with her, *Maurice A. Frater*, *McNees, Wallace & Nurick*, for intervenor, Carnegie Natural Gas Company.

*Walter A. Bunt, Jr.*, with him, *Bruce Wiegand* and *George B. Foster*, *Kirkpatrick & Lockhart*, and *Jay W. Dawson*, for intervenor, T. W. Phillips Gas and Oil Company.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., February 20, 1987:

On November 8, 1985, an administrative law judge entered an interim order directing the Carnegie Natural Gas Company (Carnegie) to cease serving two former gas customers[1] of Columbia Gas of Pennsylvania, Inc. (Columbia). The administrative law judge treated exceptions filed to this order as a request for interlocutory appeal[2] and certified to the Public Utility Commis-

---

[1] The customers were a beauty shop known as J.C. Lewis and a restaurant, The Red Bull Inn.

[2] The administrative law judge interpreted his November 8, 1985 order as an interim order, hence precluding the filing of exceptions pursuant to 66 Pa. C. S. §332(h). Interlocutory appeals to the Commission are permitted by 66 Pa. C. S. §331. This has been implemented in 52 Pa. Code §5.633.

sion (Commission) the question[3] of whether an order preserving the status quo pending full hearing was proper. Upon review, the Commission,[4] on May 7, 1986, ordered:

1. That the Certified Question is answered in the negative.

2. That the *Ruling on Request of Columbia Gas of Pennsylvania, Inc. for Interim Order,* issued by ALJ JOSEPH P. MATUSCHAK, is hereby reversed, and the injunction against the Carnegie Natural Gas Company is dissolved.

3. That the Request for Interim Order filed by Columbia Gas of Pennsylvania, Inc., on August 31, 1984, is hereby denied.

4. That this matter is remanded to the Administrative Law Judge for such further proceedings on the Complaint of Columbia Gas of Pennsylvania, Inc., as may be appropriate.

5. That a copy of this Opinion and Order be served upon all Pennsylvania jurisdictional gas utilities.

From this order, Columbia (No. 1713 C.D. 1986), the Pennsylvania Gas Association (PGA) (No. 1716 C.D. 1986), Equitable Gas Company (Equitable) (No. 1726 C.D. 1986) and The Peoples Natural Gas Company (Peoples) (No. 1780 C.D. 1986) filed petitions for review in this Court's original jurisdiction,[5] 42 Pa. C. S. §761,

---

[3] The question stated:
Under the law and the evidence presented at the hearing on the request of Columbia Gas of Pennsylvania, Inc. for an interim order against Carnegie Natural Gas Company, was there sufficient and reasonable basis to warrant the granting of the interim order by the presiding Administrative Law Judge to maintain the status quo pending disposition of the hearing on the merits?

[4] Commission Chairperson Linda C. Taliaferro dissented.

[5] PGA's petition did not aver that this Court had original jurisdiction over this matter.

and appellate jurisdiction,[6] 42 Pa. C. S. §763(a)(1). Each of the petitions sought review of the Commission's order and prayed that it be set aside. Carnegie and the T.W. Phillips Gas and Oil Company (Phillips) filed notices of intervention in support of the Commission's order.

Before this Court are the Commission's[7] preliminary objections and/or motions to quash or dismiss the petitions filed in each of the above-listed actions. We sustain the preliminary objections and grant the motions to quash.

## Original Jurisdiction

The Commission, Carnegie, and Phillips (hereinafter referred to collectively as respondents) assert that this Court lacks original jurisdiction over the petitions because the Commission has exclusive initial jurisdiction over matters involving public utility service and because of procedural omissions in the pleadings.[8] Columbia, PGA, Equitable and Peoples (hereinafter referred to collectively as petitioners) counter that this Court, pursuant to its original jurisdiction, should enter a writ

---

[6] Columbia, Equitable and Peoples intervened in each other's actions and the PGA's action.

[7] Also before this Court are Carnegie's motions to quash or dismiss filed in each of the actions in which Phillips joined.

[8] Respondents aver that Columbia and Equitable's petitions fail to contain a notice to plead, Pa. R.A.P. 1513(d); a verification, Pa. R.A.P. 1513(e); and a notice to defend, Pa. R.C.P. No. 1018.1; while People's petition lacks the latter two requirements. Although we agree that the petitions lack these filing requirements, we note that such defects are amendable and, due to the importance of the issues presented, we decline to dismiss the petitions in our original jurisdiction on this basis. We note that in its brief Equitable asserts that it plans to proceed on the record developed before the Commission.

of prohibition[9] restraining the Commission from acting in excess of its jurisdiction by unlawful rulemaking.

In Columbia's complaint and request for interim order filed with the Commission, it alleged that the customer usurpation by Carnegie was against the public interest. At the administrative hearing, Columbia produced a 1957 Commission policy statement which evidenced an intent by the Commission that unregulated customer migration would be inimicable to the public welfare. The administrative law judge found that the policy statement was, in effect, a rule or regulation which remains binding upon all gas companies. The Commission disagreed with this characterization and held that the policy statement did not constitute a regulation.[10] It concluded that the 1957 statement was an extant policy, which it specifically abrogated in its decision.

Petitioners contend that the Commission exceeded its jurisdiction by (1) implementing a policy in favor of competition in contravention of the Public Utility Code (Code),[11] which was enacted to limit competition, and

---

[9] Although petitioners did not specifically request such a writ in their petitions for review, we will treat the petition as seeking such relief. *See* Pa. R.A.P. 1502 and paragraph 2 in the official note to Pa. R.A.P. 1551. We note that respondents are not prejudiced by this action since they have treated the petitions in a similar manner.

[10] In its opinion, the Commission stated that the policy statement could not be a regulation because it was never filed as such under the then applicable Administrative Agency Law provisions, Section 21 of the Act of June 4, 1945, P.L. 1388, *formerly* 71 P.S. §1710.21, repealed by Section 609(a)(14) of the Act of July 31, 1968, P.L. 769, 45 P.S. §1609(a)(14), and because it was never published in the Pennsylvania Code pursuant to Section 403 of the Act of July 31, 1968, P.L. 769, repealed by Section 7 of the Act of July 9, 1976, P.L. 877, *formerly* 45 P.S. §1403. A similar act is now found in 45 Pa. C. S. §§1101—1602.

[11] 66 Pa. C. S. §§101—3315.

(2) enforcing the new policy without proper notice and comment procedures.

In *Yellow Cab Owners and Drivers Association v. Pennsylvania Public Utility Commission,* 87 Pa. Commonwealth Ct. 626, 630, 488 A.2d 369, 371 (1985), we stated:

> A writ of prohibition is to be used as an extraordinary remedy, within the discretion of the Court. It is not a substitute for an appeal. . . . The writ of prohibition will not issue unless there is a clear usurpation of power by the inferior tribunal and a lack of an adequate alternate remedy.

(Citation omitted.)

We hold that petitioners have failed to plead a cause of action in this Court's original jurisdiction. Our review of the pleadings attached to the petitions leads us to the conclusion that petitioners are seeking review of the May 7, 1986 Commission decision, which, if it constitutes a final adjudication, is subject to this Court's appellate jurisdiction. The Commission has supervisory and regulatory authority over all public utilities doing business within this Commonwealth. Section 501 of the Code.[12] Therefore, guidelines for utility competition and customer displacement should be originally addressed before the Commission. It is well settled that the appellate courts will not originally adjudicate matters within the jurisdiction of the Commission. *Lansdale Borough v. Philadelphia Electric Co.,* 403 Pa. 647, 170 A.2d 565 (1961). We sustain respondents' preliminary objections in the nature of a demurrer to petitioners' petitions filed in this Court's original jurisdiction.

---

[12] 66 Pa. C. S. §501.

## *Appellate Jurisdiction*

We now consider respondents' motion to quash or dismiss. Respondents argue that this Court lacks appellate jurisdiction because the Commission order is not a final adjudication.[13] Petitioners counter that Pa. R.A.P. 311(a)(4) grants to them a statutory right to file an appeal from orders dissolving preliminary injunctions and, in the alternative, that this Court should treat the order as a final adjudication because of the severity of its impact on gas utility competitions.

Our review of the administrative law judge and Commission decisions reveals that a final adjudication has been rendered only as to Columbia's request for interim relief. The accompanying *complaint* has yet to be finally resolved.[14] The Commission defined the status of the 1957 policy statement but remanded the matter for further proceedings on Columbia's complaint. The administrative law judge may still determine whether customer displacement would benefit the public in these circumstances. We hold that the May 7, 1986 Commission order was not a final adjudication.

---

[13] An "adjudication" is defined in 2 Pa. C. S. §101 as: Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

[14] In its discussion, the Commission states, "Accordingly, we shall treat the ALJ's Ruling as if it were a pemanent injunction or a final disposition of this proceeding." Commission opinion, 5/7/86, p. 5. Although Columbia asserts that these statements evidence final ruling on all matters by the Commission, we believe that the Commission only reviewed the request for interim relief. In its order, the Commission remanded the matter for further proceedings on the complaint of Columbia, if necessary. The public benefit of utility competition would be addressed in such proceedings.

However, Pa. R.A.P. 311 allows the appeals of certain interlocutory orders:

> (a) **General rule.** Except as otherwise prescribed by general rule, an appeal may be taken as of right from:
>
> . . . .
>
> (4) *Injunctions.* An order granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.

(Emphasis in original.)

The Commission contends that this rule does not apply to injunctive-type orders emanating from *administrative agencies.* We agree.

Our Supreme Court, pursuant to Article 5, Section 10(c) of the Constitution of Pennsylvania, has the

> power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require. . . .

This provision endows the Supreme Court with the authority to regulate the appeal process of all courts.

The adjudication procedure and appeal process of the Commission, an independent administrative agency created by the legislature under Article II, Section 1 of the Pennsylvania Constitution, is governed by the Code and the Administrative Agency Law.[15]

Section 5105(c) of the Judicial Code[16] provides that "[t]here shall be a right of appeal from such interlocuto-

---

[15] 2 Pa. C. S. §§501-508 and §§701-704.
[16] 42 Pa. C. S. §5105(c).

ry orders of tribunals and other government units as *may be specified by law."* (Emphasis added.)

We interpret Pa. R.A.P. 311 as authorizing interlocutory appeals as of right only from courts.

The types of interlocutory appeals permitted in Pa. R.A.P. 311(a)(1-7) disclose that, for the most part, only trial courts have jurisdiction to enter such orders. Orders affecting judgments, attachments, criminal venue or venire, injunctions, partition, or granting new trials are entered by trial courts. The adoption of the appellate rules accompanied the codification of the statutes pertaining to judicial practice and procedure. As explained in the Official Note to Rule 311, each of the divisions of subsection (a) is derived from statutes repealed ancillary to the statutory codification. None envisioned appeals from administrative agencies since the statutes predated the growth of administrative agencies.

The appropriate procedure for the appeal of interlocutory administrative orders is found in Pa. R.A.P. 312 and 1311, which provide for such appeals only by permission. This is consistent with Section 5105(c) of the Judicial Code, which states that "[t]he governing authority shall be responsible for a continuous review of the operation of section 702(b) (relating to interlocutory appeals by permission) and shall from time to time establish by general rule rights to appeal from such classes of interlocutory orders, if any, from which appeals are regularly permitted pursuant to section 702(b)."

Due to the absence in the Code or Administrative Agency Law of an express grant of the right to appeal an interlocutory order, this Court declines to entertain appellate jurisdiction in this matter pursuant to Pa. R.A.P. 311.

Therefore, we hold that interlocutory administrative agency appeals are not appealable, as of right, to this Court pursuant to Pa. R.A.P. 311.

Finally, petitioners urge this Court to take appellate jurisdiction over this matter because of the ramifications and potentially harmful effects of the Commission order. *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975). Petitioners argue that "gas wars" will begin in this state and that the gas utilities bound by Commission tariffs to charge higher costs will be substantially harmed.

This Court is concerned with the Commission's actions in regard to its policy covering customer solicitation. However, we believe that the proper forum for discussion, clarification and application of a customer migration policy is the Commission. Whether the public interest factors are discussed and heard by the administrative law judge or, as suggested by the Commission's counsel at argument, in a separate declaratory action before the Commission, a fully developed record is needed to aid the Commission and this Court in deciding on the legality of such action.

Respondents' preliminary objections are sustained, and the motions to quash and/or dismiss are granted.[17]

ORDER IN 1713 C.D. 1986

Now, this 20th day of February, 1987, it is ordered as follows:

1. To the extent the petition for review seeks relief under this Court's original jurisdiction, the respondent's preliminary objections are sustained and the petition is dismissed to the extent it seeks relief thereunder.

---

[17] Respondents also sought to quash PGA, Equitable and Peoples' petitions due to a lack of standing. Since the petitions are dismissed on other grounds, we will not address this issue.

2. To the extent that the petition for review seeks relief under this Court's appellate jurisdiction, the respondent's motion to quash is granted and the petition is dismissed to the extent it seeks relief thereunder.

### ORDER IN 1716 C.D. 1986

Now, this 20th day of February, 1987, it is ordered that respondent's motion to quash is granted. Petitioner's petition for review is dismissed.

### ORDER IN 1726 C.D. 1986

Now, this 20th day of February, 1987, it is ordered as follows:

1. To the extent the petition for review seeks relief under this Court's original jurisdiction, the respondent's preliminary objections are sustained and the petition is dismissed to the extent it seeks relief thereunder.

2. To the extent that the petition for review seeks relief under this Court's appellate jursidiction, the respondent's motion to quash is granted and the petition is dismissed to the extent it seeks relief thereunder.

### ORDER IN 1780 C.D. 1986

Now, this 20th day of February, 1987, it is ordered as follows:

1. To the extent the petition for review seeks relief under this Court's original jurisdiction, the respondent's preliminary objections are sustained and the petition is dismissed to the extent it seeks relief thereunder.

2. To the extent that the petition for review seeks relief under this Court's appellate jurisdiction, the respondent's motion to quash is granted and the petition is dismissed to the extent it seeks relief thereunder.

DISSENTING OPINION BY JUDGE CRAIG:

This court should not hold that the exercise of injunctive powers by an administrative agency is less amenable to appellate review than the injunctive functions of a trial court.

Without doubt, the Rules of Appellate Procedure generally relate to appellate review of administrative agency actions as well as those of courts. Pa. R.A.P. 311(a)(4) explicitly allows an appeal by right from an "order . . . dissolving injunctions."

If the provisions of Pa. R.A.P. 312, 1301-1323, allowing appeals by permission subject to certification by the tribunal of first consideration, apply to administrative agencies, why should not the companion appeal-by-right authorization in Pa. R.A.P. 311 also apply to them?

Although Pa. R.A.P. 1311(a) expressly refers to administrative agencies by use of the words "other government unit" (defined in Pa. R.A.P. 102), subsection (a)(4) of Pa. R.A.P. 311—unlike subsection (e)—contains no language limiting its application to trial courts.

The terms of 42 Pa. C. S. §5105(c), authorizing appeals by right "as may be specified by *law*" (emphasis added), would not seem to be limited to *statutory* specifications of such rights because the previous statutes authorizing appeals by right have been repealed and superseded by the Supreme Court's Pa. R.A.P. 311 as to such subject matter. Section 5105(c) does not speak in terms of limiting appeals by right to those instances *formerly* specified by law.

A negation of appeals by right from administrative agency injunctive functions means that every administrative agency, by refusing certification as to an interlocutory injunctive action, can—except in cases of egregious refusals—forestall review until a final order is later reached, while trial court actions of that sort are

subject to review immediately. In view of the severe impact commonly involved in the granting or refusal of injunctive orders, even the expertise of administrative agencies would not seem to warrant reading the rules to shield their injunctive orders from prompt review more than those of the judiciary.

Judge BARRY joins this dissent.