556 A.2d 988

Honorable Lucien Blackwell, Member City Council of Philadelphia, Honorable David Cohen, Member City Council of Philadelphia, Honorable Francis Rafferty, Member City Council of Philadelphia, Petitioners *v.* Commonwealth of Pennsylvania, State Ethics Commission, Respondent.

Argued December 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, BARRY, COLINS, PALLADINO, MCGINLEY and SMITH.

*Charles W. Bowser,* with him, *James P. Cousounis, Baskin, Flaherty, Elliott & Mannino, P.C.,* for petitioners.

*Vincent J. Dopko,* for respondent.

*Jules S. Henshell,* Deputy Attorney General, with him, *John G. Knorr, III,* Chief Deputy Attorney General, Chief of Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for intervenor, Office of Attorney General.

*John E. McKeever,* for Amicus Curiae, Committee of Seventy.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., April 7, 1989:

The State Ethics Commission[1] (Commission) has filed preliminary objections to a petition for review in which petitioners, three Philadelphia City Councilmen, ask this Court to enjoin the Commission's investigation of the petitioners, and to declare the investigation unlawful and unconstitutional.

In support of its preliminary objections, the Commission contends that (1) petitioners have failed to exhaust administrative remedies; (2) declaratory judgment is not an available remedy when a matter is pending before the Commission; and (3) petitioners failed to serve the Attorney General with the petition for review. We overrule the

---

[1] We note that, although the Sunset Act, Act of December 22, 1981, P.L. 508, *as amended,* 71 P.S. §§1795.1-1795.14, terminated the Ethics Commission, the Sunset Leadership Committee passed two resolutions postponing the termination until December 31, 1988. Section 4(4) of the Sunset Act, 71 P.S. §1795.4(4).

Commission's preliminary objections for the reasons that follow.

The Commission initiated an investigation of the petitioners after receiving a sworn complaint alleging that the petitioners had hired their spouses for positions in their offices, in violation of the Public Officials Ethics Act, Act of October 4, 1978, P.L. 883, *as amended*, 65 P.S. §§401-413 (Ethics Act). The Commission notified the petitioners on June 19, 1987, that an investigation concerning a possible violation of Section 3(a) of the Ethics Act, 65 P.S. §403(a), had begun. Petitioners filed the petition for review in the nature of an action for declaratory judgment and action in equity in this Court on September 13, 1988. On September 15, petitioners asked the Commission to stay the investigation and proceedings pending the outcome of the declaratory judgment action. The Commission denied that request on September 28.

On October 7, after the Commission issued a subpoena for the purpose of the ongoing investigation, the petitioners filed an application for special relief by way of a restraining order and protective order, asking this Court to quash the subpoena and to enjoin the Commission from continuing the investigation until this Court could act on the motion for preliminary injunction. On October 11, Senior Judge NARICK stayed the subpoena until the preliminary injunction hearing and denied petitioners' request to enjoin the investigation.

This Court held a hearing on the petitioners' application for a preliminary injunction on October 20. Judge SMITH issued an order on October 25 denying the preliminary injunction and granting a stay of the subpoena pending the outcome of our decision on the preliminary objections now before us.

We shall consider whether we are precluded from granting declaratory judgment when a matter is pending before the Commission.

The Declaratory Judgments Act, 42 Pa. C. S. §§7531-7541, provides as its remedial purpose "relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." 42 Pa. C. S. §7541(a). Subsection (b) of Section 7541 states that "the remedy provided by this subchapter shall be additional and cumulative to all other available remedies except as provided in subsection (c)." 42 Pa. C. S. §7541(b). Subsection (c) provides:

(c) **Exceptions.**—Relief shall not be available under this subchapter with respect to any:

(1) Action wherein a divorce or annulment of marriage is sought.

(2) Proceeding within the exclusive jurisdiction of a tribunal other than a court.

(3) Proceeding involving an appeal from an order of a tribunal.

42 Pa. C. S. §7541(c).

The Commission argues that declaratory judgment is not available in this case because the Commission's investigation falls under exception (c)(2).

Petitioners counter that this matter is not within the Commission's "exclusive jurisdiction" because the issue raised in petitioners' claim concerns the power of an agency to determine the scope of the agency's powers. Specifically, petitioners argue that the Ethics Act does not give the Commission the power to decide the question of whether the Ethics Act may be applied to the petitioners.

Therefore, the initial question we must determine is whether the Commission's investigation is a "[p]roceeding within the exclusive jurisdiction of a tribunal[2] other than a court."

Courts of this Commonwealth have had occasion to determine the propriety of declaratory relief pursuant to

---

[2] A "tribunal" is defined as "[a] court, district justice or other judicial officer vested with the power to enter an order in a matter.

these statutory provisions, though not always with resounding consistency. In *Home Oldsmobile Co. v. Township of Pine*, 65 Pa. Commonwealth Ct. 423, 443 A.2d 413 (1982), we upheld the trial court's entry of declaratory relief against a challenge that the petitioners had failed to pursue an appeal procedure set forth in the Local Tax Enabling Act, insofar as the validity of the tax ordinance was questioned. In *Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission*, 67 Pa. Commonwealth Ct. 400, 447 A.2d 675 (1982), we declined to accept the respondent's argument urging us to dismiss a petition because the dispute was alleged to have been within the exclusive jurisdiction of the administrative tribunal—the Public Utility Commission. We held there that declaratory judgment was proper to determine whether a statute violates the constitutional rights of those whom the statute affects. In that case, we relied on our decision in *Snider v. Shapp*, 45 Pa. Commonwealth Ct. 337, 405 A.2d 602 (1979)—a case involving the Commission's procedures under the Ethics Act—and on the rationale our Supreme Court explained in *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 459 Pa. 268, 281, 328 A.2d 819, 825 (1974):

> The more clearly it appears that the question raised goes directly to the validity of the statute the less need exists for the agency involved to

---

The term includes a government unit ... when performing quasi-judicial functions." 42 Pa. C. S. §102. The Commission performs a number of functions. As part of the Commission's authority to decide what conduct constitutes a violation of the Ethics Act, the Commission must investigate activities that may fall within the Ethics Act. Because the investigation function is a fundamental and necessary component of the Commission's quasi-judicial function, we conclude that the Commission is acting as a tribunal in conducting the investigation of the petitioners.

throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise. Further, the less need there is for compliance with an agency's procedures as a prerequisite to informed constitutional decision making, then correspondingly greater is the embarrassment caused to litigants by requiring conformity with the statutorily-prescribed remedy.

We held in *Allegheny Ludlum*, on the basis of this reasoning, that preliminary objections regarding the necessity to exhaust alternative remedies were without merit.

On the other hand, in *Wajert v. State Ethics Commission*, 47 Pa. Commonwealth Ct. 97, 407 A.2d 125 (1979), *aff'd*, 491 Pa. 255, 420 A.2d 439 (1980), we observed in dicta that if a moot petition were a tribunal's order, declaratory judgment would be unavailable.

Further, in *Department of General Services v. Frank Briscoe Co.*, 502 Pa. 449, 459, 466 A.2d 1336, 1341 (1983), our Supreme Court stated:

Even where there is no action pending before the Board, the declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum.

There, our Supreme Court found it apparent that the request for declaratory relief was an attempt to establish in advance the validity of an affirmative defense to be used to defeat a breach of contract action pending before the Board of Claims.

In *Myers v. Department of Revenue*, 55 Pa. Commonwealth Ct. 509, 423 A.2d 1101 (1980), we recognized that a statutory remedy is exclusive unless the jurisdiction of the courts is expressly preserved. However, in *Myers*, we were equally cognizant that challenges which go to the heart of a department or agency's power (in *Myers*, the power to tax) are beyond the scope of statutorily prescribed remedies.

From these authorities, and from *Borough of Green Tree* in particular, we glean this principle. When a statute provides for an exclusive remedy which calls for specialized fact-finding and/or application of an agency's administrative expertise, declaratory relief is not properly granted.[3] When, however, challenges—particularly constitutional challenges—are set forth questioning the *validity of a statute itself* or questioning the *scope* of a governmental body's action pursuant to statutory authority, then the Declaratory Judgments Act is properly invoked, because "the existence of an alternative remedy shall not be a ground for refusal to proceed . . . ." 42 Pa. C. S. §7537; *Allegheny Ludlum*. Of course, even constitutional challenges to the validity of an agency's action must be pursued through the usual appellate process. *Myers*.

---

[3] *See Deigendesch v. County of Bucks*, 73 Pa. Commonwealth Ct. 488, 458 A.2d 657 (1983) (exclusive statutory remedy precludes declaratory judgment where tax assessment review by Board of Assessment is mandatory); *Burnham Coal Co. v. PBS Coals, Inc.*, 65 Pa. Commonwealth Ct. 86, 442 A.2d 3 (1982), *aff'd*, 499 Pa. 59, 451 A.2d 443 (1982) (declaratory judgment not appropriate to determine liability under DER-issued permits); *Pennsylvania State Lodge, Fraternal Order of Police v. Pennsylvania State Police*, 112 Pa. Commonwealth Ct. 202, 535 A.2d 270 (1987) (declaratory relief not available under well-settled principle that Pennsylvania Labor Relations Board is exclusive tribunal for purposes of seeking redress of unfair labor practice).

In this instance, the petitioners raise substantial constitutional questions and challenge the Commission's authority to proceed with its investigation in light of the perception that the Commission's investigatory powers over them collide with the home rule authority granted to the City of Philadelphia by Article IX, Section 2 of our Constitution. While we agree with the Commission that merely raising a constitutional claim does not allow the use of declaratory judgment to circumvent proper appellate procedures, we are required by the Declaratory Judgments Act not to refuse relief simply because an alternative remedy may exist. We address petitioners' request for declaratory relief because we are of the opinion that petitioners' preliminary objections to the Commission's exercise of jurisdiction over them goes "to the heart of [its] power . . . ." *Myers*, 55 Pa. Commonwealth Ct. at 515, 423 A.2d at 1104.

There is, under these circumstances, little need "for compliance with an agency's procedures as a prerequisite to informed constitutional decision making," *Borough of Green Tree*, 459 Pa. at 281, 328 A.2d at 825, and, if this Court is to decide that the Commission is without jurisdiction over the petitioners, a "correspondingly greater ... embarrassment caused to litigants by requiring conformity with the statutorily-prescribed remedy." *Id.*

We therefore overrule the Commission's preliminary objections as to the availability of declaratory relief and direct the Commission to file an answer.

We also overrule the Commission's objection to petitioners' failure to serve the Attorney General with the petition for review and their failure to effect service by certified mail pursuant to Pa. R.A.P. 1514(c). We direct the petitioners to correct these amendable defects. Pa. R.A.P. 105; *Columbia Gas of Pennsylvania v. Pennsylva-*

*nia Public Utility Commission,* 104 Pa. Commonwealth Ct. 142, 521 A.2d 105 (1987).

ORDER

The preliminary objections filed by the State Ethics Commission in this matter are overruled and the Commission is directed to file an answer within fourteen (14) days of the date of this Order.

Petitioners shall serve the petition for review on the Attorney General within fourteen (14) days of the date of this Order.

———

CONCURRING OPINION BY JUDGE COLINS:

I concur with the erudite opinion of the majority. However, I would like to note that a critical area of inquiry has not been discussed by any party to the instant controversy; to wit, whether the State Ethics Commission (Commission) is still lawfully in existence.

As pointed out in footnote one of the majority opinion, the Commission was to be terminated effective December 31, 1987, by the Sunset Act, Act of December 22, 1981, P.L. 508, *as amended,* §§1-14, 71 P.S. §§1795.1-1795.14. It is further noted by the majority that the Leadership Committee extended the termination date until December 31, 1988, pursuant to Section 4(4) of the Sunset Act, 71 P.S. §1795.4(4).

In October 1987, a resolution proposing the continuation of the Commission was brought before the State House of Representatives and the Senate. However, this resolution was not approved by the full House and Senate prior to December 31, 1987. In order to keep the Commission from going out of existence, the Leadership Committee met on December 15, 1987, and postponed termination until June 30, 1988. It met once again on June 29, 1988, and further postponed termination until December 31, 1988.

Section 4 of the Sunset Act, 71 P.S. §1795.4, delineates the powers and duties of the Leadership Committee. Among the powers listed is the authority to postpone the review or termination of an agency for a period not to exceed one year. I am of the opinion that this Section of the Sunset Act is unconstitutional, as it allows a group of six (6) persons[1] to legislate in place of the full House and Senate. Such a practice allows the circumvention of the established procedures governing the adoption of resolutions. *See* Article II, §1; Article III, §§1, 4, 5, 8 and 9; Article IV, §15, of the Pennsylvania Constitution.

In *Cloonan v. Thornburgh*, 103 Pa. Commonwealth Ct. 1, 519 A.2d 1040 (1986), we held that the Sunset Act was constitutional because all legislative procedural constitutional requirements were met. Pointedly, we stressed that:

Section 7 [of the Sunset Act] requires that for an agency to be continued or reestablished, a positive bicameral legislative action must take place. This Chancellor holds that this action is consistent with Articles II and III of the state Constitution which control the introduction, passage, and finalization of bills. Moreover, Article II, §9 would require that any approved joint sunset resolution be presented to the Governor for his approval. If, for whatever reasons, the General Assembly fails to enact positive legislation or a resolution consistent with constitutional requirements, the termination provision in Section 6 is effective and the administrative agency expires on the previously ordained date certain and after its dismantling is

---

[1] The Leadership Committee consists of: the Speaker of the House of Representatives, the President pro tempore of the Senate and the Majority and Minority Leaders of the House of Representatives and the Senate.

completed. No constitutional violation of the legislative process has occurred.

*Id.* at 12-13, 519 A.2d at 1046. The situation which faces us now presents quite a different scenario, perhaps one not anticipated by our decision in *Cloonan*. Section 4(4) of the Sunset Act allows the Leadership Committee to effectively circumvent the General Assembly's intent to discontinue the Commission. This practice is certainly violative of the requirement that bicameral legislative action must be taken to continue or re-establish an agency.

The Leadership Committee's action was without constitutional authority and, therefore, the Commission was terminated as of June 30, 1988. This termination date is reached by adding the allotted six (6) month wind down period[2] to the original termination date of December 31, 1987.

If one concludes that as of June 30, 1988, the Commission went out of existence, one must reach the further conclusion that the Commission has no jurisdiction to continue this or any other investigation.

Perhaps this issue will be presented to the Court at a procedurally appropriate juncture in the future.

Judge BARRY joins in this Concurring Opinion.

---

[2] *See Cloonan* (agency authorized to wind up its affairs during six month period immediately after termination).